# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**BUNTING PROPERTIES I, INC.**
Plaintiff,
on behalf of itself and all others
similarly situated

Case No.
Hon.

**v.**

**CITY OF DEARBORN HEIGHTS,**
a municipal corporation;
**MOHAMED SOBH**, Director of the City of
Dearborn Heights Building and Engineering Department;
and
**JOHN OR JANE DOE**, code official(s)
Jointly and Severally,
Defendants

_____/

**METRO DETROIT LITIGATION GROUP**
**BY: STUART SANDWEISS (P60921)**
Attorney for Plaintiffs
18481 W. Ten Mile Rd., Suite 100
Southfield, MI 48075-2693
(248) 559-2400  Fax (800) 577-1716
stuart@metrodetroitlitigation.com

_____/



METRO DETROIT
LITIGATION GROUP

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Bunting Properties I, Inc. ("Bunting") on behalf of itself

and all others similarly situated (collectively "Plaintiffs"), through

counsel, for their Complaint Defendant City of Dearborn Heights,

Michigan (the "City"); Mohamed Sobh, Director of the City's Building

Page 1 of 54

and Engineering Departments and the other John Doe and Jane Doe building officials (the "Officials") (collectively "Defendants") states:

**INTRODUCTION**

1.     This action is brought on behalf of a class of all persons (the "Class" or "Plaintiffs") who own residential real property in the City of Dearborn Heights, Michigan (the "City") and have:

    a.     been forced to have warrantless searches of their property in violation of both the 4th Amendment to the United States Constitution (as applied to the states through the 14th Amendment) and Article I, Section 11 of the State of Michigan Constitution in order to use, rent, occupy lease and/or sell their property; and/or

    b.     paid money to the City for warrantless inspection fees; and/or

    c.     been fined by the City for failing to have a Certificate of Occupancy; and/or

    d.     not been informed of their right to appeal the City's decisions regarding repairs and/or maintenance to their property which  forced them to make repairs to their property that were not required under the code in order to avoid prosecution in court;



METRO DETROIT
LITIGATION GROUP

e.     not been able to use, rent, occupy, lease or sell their property because of the requirement to obtain a Certificate of Occupancy from the City following a warrantless search.

2.     Plaintiffs also bring this action pursuant to 42 U.S.C. §1983 for declaratory judgment, injunctive relief, actual and nominal damages, and other relief arising  from the unconstitutional policies, practices, and threats of Defendants.

3.     Defendants' policies, practices, and conduct threaten Plaintiffs with irreparable harm to their rights under the Fourth, Fifth, and/or Fourteenth Amendments to the United States Constitution, as well as analogous provisions in the State of Michigan Constitution including Article I, Sections 11 and 17, and such harm may only be remedied by a ruling from this Court.

4.     Defendants have impeded and threaten to further unconstitutionally impede Plaintiffs in their right to be free from unlimited warrantless searches without probable cause by maintaining, implementing and enforcing vague policies that (i) threaten Plaintiffs and others with subjection to unduly broad warrantless searches of their houses and business property without probable cause; (ii) violate Plaintiffs' and others' reasonable expectation of privacy; and (iii)



retaliate against Plaintiffs and others' for exercising their Fourth Amendment rights by either (a) threatening or assessing fines against them, or (b) depriving them of their property rights, including but not limited to the right to use, rent, occupy, lease or sell their property.

5.     Defendants further fail to follow their own ordinances by issuing violation notices, citations and/or appearance tickets to homeowners, such as Bunting and others who are similarly situated without notifying them of their statutory right to appeal Defendants' determinations regarding the condition of their property to an independent board.

6.     As a result of the policies, practices, and customs of the Defendants, as well as certain conduct by one or more Defendants, Plaintiffs will suffer irreparable harm unless the Defendants are immediately enjoined from restricting Plaintiffs' constitutional and statutory rights in this manner.

7.     For the reasons above, Plaintiffs seek, amongst other things, declaratory judgment and injunctive relief determining that the offending provisions of the City's "Code of Ordinances of the City of Dearborn Heights" (the "Code") are unconstitutional on their face, and as applied to Plaintiffs, and further, that the Code is insufficient to



support the issuance of an "administrative" search warrant.

## PARTIES, JURISDICTION AND VENUE

8.     The named Plaintiff, Bunting, is a Michigan corporation that owns a residential home located at 8639 Columbia, Dearborn Heights, Michigan 48127 (the "Home" or the "Property") which is subject to the Code and its inspection requirements.

9.     Defendant City is a municipal corporation located within Wayne County, Michigan; it is created and existing under and by virtue of the laws of the State of Michigan. In fulfilling its duties, the City acts by and through various departments and public officials, including without limitation, Defendants Sobh and/or John Doe and/or Jane Doe code officials (collectively the "Officials") as defined in the Code.

10.    All actions by the Defendants described herein were undertaken under color of state law, which caused the deprivation of Plaintiffs' rights protected by the United States Constitution and/or the State of Michigan Constitution.

11.    All actions described herein of the Defendant City, its officers, agents, servants, employees or persons acting at their behest or direction, were done and are continuing to be done under the color or pretense of state law and/or the City's Code.


METRO DETROIT
LITIGATION GROUP

12.   Accordingly, this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to prevent imminent deprivations, under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary and injunctive relief and damages; and under 42 U.S.C. § 1988 to grant Plaintiffs' prayer for relief regarding the recovery of costs, including damages, restitution, and reasonable attorney fees.

13.   To the extent necessary, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 USC §1367.

14.   Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) as Defendants are situated within this judicial district and division, (ii) the Defendants transact business within this District, (iii) the conduct complained of occurred within this



METRO DETROIT
LITIGATION GROUP

district and division; and (iv) the affected properties are located within this district and division.

15.    As additional class members are identified, this district and division will remain the most convenient forum in which all future cases can be considered and consolidated as necessary.

## THE NATURE OF THE ACTION

16.    Pursuant to the Home Rule City Act (MCL 117.1 et seq.) the State of Michigan permits municipal corporations like City to adopt certain laws, codes, or rules for building maintenance issues.

17.    MCL 117.3 (K) specifically addresses the adoption of certain building codes and states:

> Except as otherwise provided under the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531, a city may adopt a law, code, or rule that has been promulgated and adopted by an authorized agency of this state pertaining to fire, fire hazards, fire prevention, or fire waste, and a fire prevention code, plumbing code, heating code, electrical code, building code, refrigeration machinery code, piping code, boiler code, boiler operation code, elevator machinery code, an international property maintenance code, or a code pertaining to flammable liquids and gases or hazardous chemicals, that has been promulgated or adopted by this state, by a department, board, or other agency of this state, or by an organization or association that is organized and conducted for the purpose of developing the code, by reference to the law, code, or rule in an adopting ordinance and without publishing the law, code, or rule in full. The law, code, or rule shall be clearly identified in the ordinance and its purpose shall be



METRO DETROIT
LITIGATION GROUP

published with the adopting ordinance. Printed copies of the law, code, or rule shall be kept in the office of the city clerk, available for inspection by, and distribution to, the public at all times. The publication shall contain a notice stating that a complete copy of the law, code, or rule is made available to the public at the office of the city clerk in compliance with state law requiring that records of public bodies be made available to the general public.

18.    In accordance with the Home Rule City Act and MCL 117.3(K), on or about January 22, 2002, the City enacted Ord. No. H-01-24 §1, which adopted the international property maintenance code (the "IPMC") as the code for maintenance of property in the City.  See. Code Sec. 7-201 (Exhibit 1), which is incorporated herein by reference.

19.    The IPMC, as adopted by the City, governs the regulation of and maintenance of existing residential real property within the City.

20.    The City has also enacted Sections 7-466; 7-467; and 7-468 of the Code (Exhibit 2 - incorporated herein by reference), which require a Certificate of Occupancy for a person to occupy, reoccupy or sell a residential home.

21.    In order to obtain a Certificate of Occupancy the Code gives the City's director of building and engineering or his or her designee (the "Official") the authority to enter, inspect, examine and/or survey the home **without** first obtaining a search warrant and, further provides that



METRO DETROIT
LITIGATION GROUP

if the Official needs to obtain a search warrant, that the City can request the Court to assess up to $250 in costs rationally related to pursuit of a search warrant.

22.    As a result, hundreds, if not thousands, of homeowners have succumbed to the City's demand and allowed warrantless searches of their properties.

23.    In order to obtain a warrantless inspection of a property, a homeowner is required to pay an Inspection Fee ("the "Inspection Fee").

24.    Upon information and belief, the City receives approximately $500,000 per year in Inspection Fees from these warrantless inspections -- over 1% of its annual budget.  (The City's 2017 $43.1 million annual budget budgeted $550,000 for Building Inspections -- in addition to $20,000 for Rental Registrations and $600,000 for Building Permits).

25.    Following payment of the Inspection Fee, the Official(s) perform the warrantless inspection of the Property -- presumably under the theory that the homeowner consented (albeit with coerced consent).

26.    The warrantless inspections under these codes and ordinances are performed by the Official(s) who knows, or should know, the requirements of the IPMC, the Code and/or the other applicable codes.



METRO DETROIT
LITIGATION GROUP

27.     The City's inspection under these ordinances is governed by the City's adoption of the IPMC and the inspection requires compliance with the IPMC.  Stated another way, a property owner cannot obtain a Certificate of Occupancy from the City until he passes an inspection pursuant to the IPMC.

28.     The IPMC contains its own set of procedural guidelines with which the City must comply. For example, prosecution of violations for the failure to comport with an inspection performed under the IPMC cannot be issued until a person has failed to comply with a notice of violation served in accordance with Section 107 of the IPMC.

29.     The preamble to the IPMC clearly states: "Chapter 1 is largely concerned with maintaining 'due process of law' in enforcing the property maintenance criteria contained in the body of the code. Only through careful observation of the administrative provisions can the building official reasonably expect to demonstrate that 'equal protection under the law' has been provided."

30.     Section 107 of the IPMC (as adopted by the City in Code Section 7-481) sets forth the form of Notice of violation which must:

1.     Be in writing.

2.     Include a detailed statement of the specific violations and the remedial action required.



3.    Allow a reasonable time for the performance of any act it requires.

4.    Be served upon the owner or his or her agent, or the occupant, as the case may require.

31.    Notwithstanding, the Code omits reference to the specific part of Section 107 of the IPMC that requires the City to inform a property owner of the right to appeal when the City issues a violation notice.

32.    The form of the IPMC required notices (which was adopted by the City) are procedural due process requirements intended to provide the homeowner with adequate notice and an opportunity to be heard in the event of any dispute over the alleged violations of the applicable code. This is especially important where, as here, the violation for failing to comply with the IPMC (and therefore the City's Code requiring a Certificate of Occupancy) is a strict liability offense (See IPMC Section 106.3 and Code Section 7-202(6)).

33.    The procedural guidelines required by section 106.3 of the IPMC (compliance with a notice or order served in accordance with Section 107 - which requires the City to inform the property owner or



METRO DETROIT
LITIGATION GROUP

owner's authorized agent of the right to appeal) are conditions precedent to the issuance of any penalty.

34.   These procedural guidelines are vital to the fair administration of these codes to ensure that Code Officials are not refusing to acknowledge compliance of a property for items that are not required by the IPMC or other applicable codes. For example, existing buildings are subject to the IPMC but are not subject to the new-construction codes; where a code official purports to require a new-construction code to be complied with on an existing building, the IPMC specifically contemplates an owner's ability to challenge the alleged defect before the imputation of strict liability attaches for failing to comply.

35.   Absent the procedural due process requirements of the IPMC, the City and its Code Officials are free to require any number of unconstitutional and improper demands on homeowners who have no mechanism to challenge them.  This conduct would require homeowners to make repairs and/or capital improvements not required by the Code, and at great personal expense, out of fear that the City will levy the homeowner's property or throw the homeowner in jail for failure to pay these improperly levied fines.



36.    The due process requirements are further demonstrated as the IPMC's appeal process requires an independent board of appeals to hear these matters.  The IPMC provides that such board members may **not** be employees of the jurisdiction. The IPMC specifically states that the purpose of the appeal is to allow the homeowner to dispute "that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply, or the requirements of this code are adequately satisfied by other means."

37.    Despite these procedural guidelines required by the IPMC (which the City adopted), the City blatantly refuses to comply with them. Instead, in complete abrogation of the due process requirements of its own ordinances, the City issues civil infraction fines to homeowners such as Plaintiffs for failure to bring properties into compliance with the IPMC and/or for failing to obtain a Certificate of Occupancy pursuant to the Code.  In reality, the City's issuance of a civil infraction stems solely from the owner's alleged failure to comply with the IPMC inspection and regulations.



38.    Moreover, when the City issues deficiency notices under its codes and ordinances and the IPMC, the Deficiency notices never comply with Section 107.2 of the IPMC as, *inter alia*, they fail to inform the

homeowner of the right to appeal. See eg. Exhibit 3 - a Notice of Violation sent to Bunting regarding an alleged violation of Sections 33-51 through 33-56 of the Code that fails to notify Bunting of its right to appeal.

39.     When a homeowner is coerced into allowing a warrantless inspection of a property, an Official inspects the property and the City then issues a property inspection report (the "Inspection Report") that requests that the owner correct alleged code violations in order to obtain a Certificate of Occupancy. These reports specifically allege failures to comply with the IPMC and associated codes (the "Associated Codes" including the 2012 International Property Maintenance Code (Building), (Mechanical) and (Plumbing) and/or the 2011 National Electrical Code (Electrical)).

40.     The sole reason a certificate of compliance would not be issued following an inspection is for a failure to meet the requirements of the IPMC and/or the Associated Codes.

41.     At no point does the City and/or the Report notify the property owner of his right to appeal the Official's decision and/or the Inspection Report pursuant to terms of the IPMC.

42.     The absence of this statutory notice to the Owner is a direct violation of the IPMC.



43. The absence of this notice to the Owner further precludes the issuance of any court action to enforce the alleged violations as set forth in Section 106.3 of the IPMC -- which provides that a person can be found guilty of a misdemeanor or civil infraction, based upon strict liability, if the person fails to comply with notice served in accordance with Section 107 (which includes the requirement to inform the property owner of the right to appeal and the city's right to file a lien against the property, as well as a requiring a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the IPMC).

44. Upon information and belief, the required notices are not provided to thousands of homeowners in the City who attempt to obtain Certificates of Occupancy and comply with the IPMC.

45. Despite the City's repeated and blatant refusal to comply with due process, upon information and belief, the City issues hundreds, if not thousands, of civil infraction and/or misdemeanor violations to homeowners without informing them of their rights and without providing them with the constitutional due process contemplated and required by the IPMC and the City ordinance.



46.   The City further threatens these homeowners with liens, evictions, demolition, daily fines, and even criminal liability in order to extort fines and fees from them to fund their municipality.

47.    Most homeowners are unaware of their rights to appeal or challenge the code official's determination of the applicability of the Code, and because the City fails to notify them of that right, such homeowners are forced to succumb to the power of the City and/or the City Officials and incur substantial costs and/or pay countless fines.

48.   Denying a homeowner the notice of their right to appeal the Code Official's interpretation and determinations under the IPMC has removed any possibility the homeowner has to challenge to the Code Official's determination or interpretation of the IPMC.  In effect, this gives the code Official "*cart blanche*" to make any demand on the homeowner – even those not required by the IPMC – without providing any recourse to the homeowner.  This deprives the homeowner of any due process related to these proceedings.

49.   To the extent someone attempts to challenge the applicability of the Code Official's determination under the IPMC, they can only do so in court under the threat of further punishment or fine.  However, if this occurs, the court is neither permitted, nor in a position to, inquire into



the reason for the homeowner's failure to obtain a Certificate of Occupancy, as, from the Court's perspective, the ordinance is a strict-liability offense.

50.     In essence, the City's actions and inactions have removed a homeowner's ability to confront or challenge the authority of the City or the Official, as the homeowner is repetitively beaten into submission and/or forced to pay hundreds or thousands of dollars merely to be placed back into the same position – ownership of a property that is allegedly not in compliance with the IPMC and no way to challenge the City or Code Official's determinations under the IPMC.

51.     The failure to provide the constitutionally required due process elements set forth in the IPMC in the City's notices violates Plaintiffs' due process rights.

52.     The issuance of a ticket without complying with the administrative provisions of the IPMC also violates Plaintiff' due process rights.

53.     Plaintiffs' due process rights are further infringed because the provisions of the IPMC are overly vague and impose strict criminal or civil liability without explaining what is required to comply with a



particular provision and because there is no definable enforcement mechanism, thereby leading to arbitrary and capricious enforcement.

54.    For example, Chapter 1 of the IPMC pertains to "Scope and Administration" and generally sets forth that structures and premises are to be maintained "in good working order" and that repairs, maintenance and the like are to be done in a "workmanlike manner" -- yet the provisions provide no guideposts for what those phrases mean or any guidelines for how an owner can comply.  See eg. IPMC §§ 102.2 and 102.5.  These vague and uncertain standards are further replicated under all other substantive provisions of the IPMC.  See e.g., IPMC §302.1 ("clean, safe and sanitary condition); IPMC §302.3 ("proper state of repair"); IPMC §302.7 ("sound and in good repair"); IPMC §304.1, and IPMC §304.6-.13 ("good repair"); IPMC §305.1 ("good repair, structurally sound and in a sanitary condition"); IPMC §502.1 ("sanitary, safe working condition"); IPMC §504.1 ("properly installed and maintained in good working order").

55.    Instead of providing illuminating guideposts, Section 104.1 of the IPMC provides that the Code Official has the authority to render interpretations of the Code and set forth policies and procedures in order to clarify application of its provisions -- yet the City has not implemented



any formal policies or procedures to do so. This in turn leaves each and every alleged violation of the IPMC to the whim of the Code Official in an "I know it when I see it" fashion. See also IPMC 109.1 and 109.2 ("in the opinion of the code official"). It also leaves property owners without any basis to determine how to comply with the IPMC to avoid violations and the imposition of fines, liens, and other enforcement mechanisms.

56.     As such, the Code and the IPMC itself are unconstitutionally vague and should be stricken and all funds received under such unconstitutional enforcement should be returned.

### FACTS APPLICABLE TO THE NAMED PLAINTIFF

57.     The named Plaintiff, Bunting Properties I, Inc. ("Bunting") owns a residential house located at 8639 Columbia in the City of Dearborn Heights (the "Property").

58.     In 2016 Bunting entered into a contract to sell the Property for approximately $100,000.



59.     However, based upon the Code, Bunting was required to pay for, consent to, and obtain a warrantless inspection of the Property prior to closing in order to obtain a Certificate of Occupancy.

60.    Faced with the prospect of losing the sale, Bunting then paid the inspection fee and, on July 25, 2016, the City inspected the Property, issuing a Report (Exhibit 4) that alleged certain code violations -- without notifying Bunting of its right to appeal the results of the inspection.

61.    One of the requirements was replacement of a concrete driveway that, the City alleged, needed a permit.

62.    Because Bunting was going to retain a contractor who was not licensed by the City, Bunting's agent attempted to obtain a homeowner's permit for the installation of the driveway.  However, in order to obtain such a permit the City required the agent to sign an Affidavit Form wherein, *inter alia*, Bunting's agent was required to state that Bunting would not sell the was Property for at least a year.

63.    Bunting's agent refused to sign the Affidavit as it contained statements that were not true.

64.    As a result, Bunting was unable to obtain a homeowner's permit for the concrete replacement.

65.    Notwithstanding, upon information and belief, the contractor, who was not yet hired (but was anticipating to be hired) removed the concrete driveway but, because neither he, nor Bunting, could obtain a permit, the work remained unfinished for several months.



METRO DETROIT
LITIGATION GROUP

66. Ultimately, the City issued a citation against Bunting who, based on strict liability, was found responsible for not obtaining a permit for the driveway replacement and who was fined for the civil infraction.

67. Later Bunting found a different contractor to replace the driveway -- at a substantial cost to Bunting.

68. In August 2017 Bunting allowed a tenant to move into the Property. A short time later the City issued Bunting a civil infraction ticket for failure to obtain a Certificate of Occupancy.

69. However, the City failed to comply with the requirements of the IPMC as the City failed to issue a violation notice (which notified Bunting of its right to request an appeal as is outlined in Section 107.2 of the IPMC) prior to issuing the ticket.

70. The ticket, too, did not comply with the requirements of the IPMC, as it failed to notify Bunting of its right to request an appeal as is outlined in Section 107.2 of the IPMC.

71. Instead, the City proceeded to prosecute Bunting in court, ultimately convincing the local district court judge to issue a non-appealable, non-final order (Exhibit 5) requiring the tenant to vacate the Property by March 7, 2018. (The Order was supposed to, but does not,



METRO DETROIT
LITIGATION GROUP

indicate that the vacate order was only applicable if Bunting failed to obtain a Certificate of Occupancy by that date).

72.   Notwithstanding, nowhere in the Code or the IPMC is there a provision allowing the City to seek to evict a person (especially a person who was not a party to the civil infraction case) from a property for a property owner's failure to obtain a Certificate of Occupancy. Rather, at best, the City can impose a civil infraction fine of not more than $150 for a violation of the Code. See eg. Code Sec. 7-488.

73.   In order to attempt to terrify the tenant (who, upon information and belief was previously harassed by the City after she complained about garbage pickup and snow that the city piled in front of the sidewalk preventing children from safely crossing the street), the City posted a copy of the Eviction Order (Exhibit 5) on the front door of the Property.

74.   In order to obtain a Certificate of Occupancy, Plaintiff was required to consent to yet another warrantless search of the Property in violation of both the 4th Amendment to the United States Constitution (as applied to the states through the 14th Amendment) and Article I, Section 11 of the State of Michigan Constitution.



75.    On March 5, 2018 the City conducted a third warrantless search of the Property.  In order to receive the results of the search, Bunting's agent had to travel to the city and pay $1.00 to get a copy of the report (Exhibit 6 - the "Third Report") and which again alleged violations and again failed to notify Bunting of its right to appeal pursuant to Section 107.2 of the IPMC.

76.    Upon receiving the Third Report, Bunting's agent inquired about an appeal and was instructed that, in order to appeal, Bunting would have to pay $500 to the City although the City's staff would not provide a legal basis for this requirement.  When questioned, the City staff indicated that Bunting's agent would have to speak with the Director of the Department, (Defendant) Mohammed Sobh at a specific time.

77.    After receiving the Third Report, and at the direction of the City staff, Bunting's agent attempted to speak with Defendant Sobh at the appointed time regarding the Property and regarding an appeal. However, Bunting's agent was told that Mr. Sobh was unavailable.

78.    Later that day Bunting delivered a letter to Mr. Sobh (Exhibit 7) requesting an appeal.  As of this writing, Mr. Sobh has not responded to the request.



79.   In the interim the City is still attempting to fine Bunting, evict the tenant and/or take Plaintiff's property without just compensation and/or due process in violation of the 4th, 5th and/or 14th Amendments to the United States Constitution and in violation of Article 1, Section 17 of the Michigan Constitution.

80.   As a direct and proximate result of Defendants' conduct, and as will be further outlined below, Plaintiff seeks damages against Defendants based on Defendants' numerous constitutional violations.

81.   As will also be outlined below, Plaintiff seeks certification of a class or classes consisting of all Dearborn Heights homeowners who, *inter alia*, have:

> a.   been required to consent to a warrantless search in order to obtain a Certificate of Occupancy;
>
> b.   not been able to use, rent, occupay, lease and/or sell their property because of the City's unconstitutional requirement to obtain a Certificate of Occupancy;
>
> c.   been issued violation notices requiring corrective action without the statutory notice that informs the homeowner of the right to appeal;
>
> d.   paid fines and/or costs based on the city's violation(s) of the homeowners' constitutional rights and/or violations of the city Code and/or the IPMC.



METRO DETROIT
LITIGATION GROUP

## COUNT I - VIOLATION OF DUE PROCESS
(Failure to provide a proper notice and due process
as required under the IPMC)

82.    Plaintiffs incorporate all other paragraphs of this Complaint into this Count by reference.

83.    Both the 14th Amendment to the United States Constitution and Article I, Section 17 of the State of Michigan Constitution provide that it is unconstitutional for a governmental unit, such as Defendant City, to deprive a person of their property without due process of law.

84.    The IPMC is intended to provide an owner of real property (a "Homeowner") with the minimum due process recognized by the United States and State of Michigan constitutions.

85.    The IPMC requires that a Homeowner must be provided with a notice of deficiencies and a reasonable time to make repairs or improvements in order to comply with the applicable code and obtain a Certificate of Occupancy.

86.    The IPMC requires that the Homeowner be provided with a procedural means to challenge the City's Code Official and their interpretation or application of the IPMC as to the Homeowner.

87.    The IPMC requirements as set forth in the IPMC codified by the City (and referenced in this Complaint) function as a required



METRO DETROIT
LITIGATION GROUP

minimum due process afforded to the Homeowner -- before any legal or other court action can be taken by the City against the Homeowner. In other words, they are conditions precedent to the City's ability to lawfully issue or seek any fine, fee, or other penalty against the Homeowner.

88. Both the IPMC and the Code of make the failure to obtain a Certificate of Occupancy a strict-liability offense. As such, a court that hears these alleged violations is legally prohibited from hearing any reason for the failure to comply and cannot address any challenges that a homeowner may have to the applicability, construction, or interpretation of the IPMC.

89. Equally important is Section 111 of the IPMC that requires appeals to be heard by an impartial panel of at least three individuals who are **not** employed by the City and whom are qualified by experience and training in the relevant areas being challenged.

90. No court is (and can never be) in a position to provide the expertise and impartiality contemplated by the IPMC and the City's own ordinances. In fact, as was referenced above, a court is only permitted to review the City's allegation(s) under a strict liability theory. Accordingly the court can only ask one question: "do you have a Certificate of Occupancy?" If the answer is "no," the court is required to find the



Homeowner responsible regardless of the reason, regardless of whether a Homeowner is required to give up the Homeowner's 4th Amendment rights against a warrantless search without probable cause of a criminal violation, and regardless of whether or not the City complied with the IPMC's procedural due process requirements prior to issuing the violation in the first place.

91.    The form and manner of strict liability court hearings are not the equivalent of a proper appeal under the IPMC and therefore deprive Homeowners of a meaningful opportunity to be heard and deprive them of any due process.

92.    The City's failures as set forth in this Complaint violate the constitutional due process rights enjoyed by Plaintiffs -- including but not limited to:

      a.    The City's notices fail to notify the Homeowner of his or her constitutional right to appeal the code official's interpretation of the IPMC and/or failure to provide a reasonable time period in which to correct the alleged deficiencies;

      b.    The City's notices fail to notify the Homeowner that the City may lien his property for failing to comply;



METRO DETROIT
LITIGATION GROUP

c.    Requiring the Homeowner to consent to and pay for a warrantless search in order to obtain a Certificate of Occupancy.

d.    The City's failure to allow a Homeowner to challenge the code official's interpretation of the IPMC even if presented with a request to do; and

e.    The City's issuance of fines, fees, and levies to Homeowners without completing these conditions precedent.

93.    City violated Plaintiffs' due process rights.  As a direct and proximate result, Plaintiffs incurred monetary and other damages. Left unchecked, the City and its Officials will continue to administer the IPMC in violation of Plaintiffs' due process rights.

94.    Accordingly, Plaintiffs seek damages against Defendant(s) (including costs and attorney fees) for Defendant(s) violating Plaintiffs' due process rights.

Wherefore, based on this Count, Plaintiffs respectfully ask this Court to award them damages in an amount to be determined against Defendants, together with exemplary and/or punitive damages, interest, costs and attorney fees, for Defendant(s) violating Plaintiffs (the named Plaintiff and others similarly situated) due process rights.



## COUNT II - VIOLATION OF DUE PROCESS
(Forcing Plaintiffs to Forfeit Their Constitutional Rights in order to Occupy, Use, Rent or Sell Property

95.     Plaintiffs incorporate all other paragraphs of this Complaint into this Count by reference.

96.     Both the 4th Amendment to the United States Constitution and Article I, Section 11 of the State of Michigan Constitution prohibit Defendant City and/or its employees from conducting unreasonable searches of a residential house without a search warrant obtained after a neutral and detached magistrate finds probable cause, supported by oath or affirmation, that a crime was committed.

97.     Thus Plaintiffs have a constitutional right against unreasonable searches and/or seizures where there is no probable cause that a crime was committed and where there is no warrant issued by a neutral and detached magistrate.

98.     The 14th Amendment to the United States Constitution and Article I, Section 17 of the State of Michigan Constitution both prohibit the City from depriving a person of their property without due process of law and/or just compensation.



METRO DETROIT
LITIGATION GROUP

99.    Thus, Plaintiffs have a protected property interest in using, renting, occupying, leasing and/or selling their property and/or earning income from such rentals or sales.

100.   Section 7-467 of the City's Code provides that a person may not occupy or reoccupy a building without first obtaining a certificate of occupancy:

Sec. 7-467. - Certificate of occupancy.

(a)    It shall be a violation of this article for any person to occupy or reoccupy, or for any owner or agent thereof to permit the occupation or reoccupation of, any building or addition thereto, or part thereof, for any purpose, until a certificate of occupancy has been issued by the building and engineering department. The certificate of occupancy so issued shall state that the occupancy complies with all the provisions of this article, as amended.

(b)    Application for the certificate of occupancy containing the number and names of all occupants who will occupy the premises, together with a fee to be determined by city council resolution from time to time, for each dwelling unit occupied, shall be filed with the director of building and engineering. Upon receipt of the application and fee, the director or his or her designee shall inspect the premises within ten (10) business days and, if approved, issue a certificate of occupancy.

(Ord. No. H-95-7, § I, 11-14-95; Ord. No. H-96-12, § I, 10-22-96)

101.   In order to obtain a Certificate of Occupancy, a person must consent to a warrantless inspection of his/her/its property.



METRO DETROIT
LITIGATION GROUP

102. Section 7-466 of the City's Code further provides that city officials may conduct warrantless inspections at any time and, if a person refuses an inspection, the City may obtain a search warrant and charge the person up to $250 to obtain such warrant.

Sec. 7-466. - Right of entry, access.

(a) The director of building and engineering, or his or her designee, hereby authorized and directed to make inspections to determine the conditions of dwellings, dwelling units, rooming units and premises located within the city, in order that [he/she] may perform [his/her] duty of safeguarding the health and safety of the occupants of dwellings and of the general public. For the purpose of making such inspections, the director of building and engineering, or his or her designee, is hereby authorized to enter, examine and survey, at any reasonable time, all dwellings, dwelling units, rooming units and premises. The owner or occupant of every dwelling, dwelling unit, rooming unit, or the person in charge thereof, shall give free access to such dwelling, dwelling unit or rooming unit and its premises, at any reasonable time, for the purpose of making such inspection, examination and survey.

(b) The building and engineering director, or his or her authorized representative, shall inform a tenant or occupant that the tenant or occupant has the right to refuse access or entry by an inspector who does not have a search warrant.

(c) Upon being refused entry or access for inspection, the building and engineering director, or his or her authorized representative, who has probable cause to believe this section is being violated, may obtain a search warrant for the limited purpose of gaining entry in order to satisfy his or her obligations under this section.



METRO DETROIT
LITIGATION GROUP

(d)   Should it become necessary to obtain a search warrant in order to enforce the inspection provisions of this section, the city shall be authorized to request the court to assess costs rationally related to the pursuit of such warrant, but in no event to exceed two hundred fifty dollars ($250.00).

(Ord. No. H-95-7, § I, 11-14-95; Ord. No. H-96-13, § I, 10-22-96)

103.   As a matter of practice, the City coerces property managers, homeowners, and tenants into consenting to entry and a search under the threat of fines, penalties, and refusal to issue a Certificate of Occupancy.

104.   As a result, Plaintiffs are deprived of their rights against warrantless searches and otherwise must pay inspection fees, fines and/or penalties in order to gain compliance.

105.   These cited provisions of the IPMC as adopted by the City and/or the City's Code are unconstitutional and unenforceable on their face and their application to Plaintiffs have resulted in violations of Plaintiffs' due process rights.

106.   As is set forth in this Complaint, the City conducts an unconstitutional scheme to require Certificates of Occupancy (the "Certificate of Occupancy Scheme") and has wrongfully collected hundreds of thousands (if not millions) of ill-gotten fees.



107.   City violated Plaintiffs' due process rights.  As a direct and proximate result, Plaintiffs have incurred monetary and other damages. Left unchecked, the City and its Officials will continue to administer the IPMC and the City's Code in violation of Plaintiffs' due process rights.

108.   Accordingly, Plaintiffs seek damages against Defendant(s) (including costs and attorney fees) for Defendant(s) violating Plaintiffs' due process rights.

Wherefore, based on this Count, Plaintiffs respectfully ask this Court to award them damages in an amount to be determined against Defendants, together with exemplary and/or punitive damages, interest, costs and attorney fees, for Defendant(s) violating Plaintiffs' due process rights.

## COUNT III - UNJUST ENRICHMENT

109.   Plaintiffs incorporate all other paragraphs of this Complaint into this Count by reference.

110.   The City has been extracting fees and/or penalties from Plaintiffs by denying Plaintiffs' procedural due process rights and by conducting the illegal Certificate of Occupancy Scheme as set forth above.



111.   As a result, Defendant City has been unjustly enriched by the amount collected.

112.   Plaintiffs now asks this Court to avoid injustice and the unjust enrichment of Defendant City and to enter judgment in favor of Plaintiffs and against Defendant City in an amount to be determined for the total collected by Defendant City as part of its illegal Certificate of Occupancy Scheme.

Wherefore, based on this Count, Plaintiffs respectfully ask this Court to award them damages in an amount to be determined against Defendants, together with exemplary and/or punitive damages, interest, costs and attorney fees, for Defendant(s) violating Plaintiffs (the named Plaintiff and others similarly situated) due process rights.

## COUNT IV - MUNICIPAL LIABILITY

113.   Plaintiffs incorporate all other paragraphs of this Complaint into this Count by reference.

114.   As is outlined in this Complaint, the City and its agents have administered the IPMC and the Code in ways that cause and result denial of Plaintiffs' due process rights.



METRO DETROIT
LITIGATION GROUP

115.   More specifically, the City, through its policies and customs as are implemented and enforced by their agents, has circumvented the requirements of due process by:

a.   requiring and/or coercing property owners to consent to warrantless inspections of their property in order to obtain a Certificate of Occupancy;

b.   failing to notify property owners of their right to appeal an inspection deficiency notice under the IPMC and/or the City's Code;

c.   failing to notify property owners of a reasonable time in which to cure any alleged deficiencies;

d.   failing to notify property owners of the City's right to place a lien on their property for failing to comply with the IPMC;

e.   ignoring requests for appeals of the Code Officials' interpretations of the IPMC; and

f.   Issuing tickets and violations against Plaintiffs without first complying with the procedural due process afforded by the IPMC.

116.   In this regard, and as a routine part of their policies and procedures, the City and its agents and/or employees deprived Plaintiffs



of their rights to a meaningful opportunity to be heard and their
constitutional right to due process.

117. The City and its agents and/or employees fail in this respect
because they are driven by profit making, rather than a legitimate
governmental interest in preserving and protecting the safety and
welfare of occupants of housing. (For example, with regard to the named
Plaintiff, the alleged violations noted in the City's inspection report
included failure to vent a non-operational clothes dryer that was stored in
the basement of the property and failure to repair a tear in a window
screen that was not even visible from the exterior of the house).

118. The City's desired purpose is to set up homeowners to fail so
they can issue tickets that cannot be contested in court in order to
generate funding to finance the municipality.

119. As a direct result of, and due to the driving force behind, the
City's and their agents and/or employees refusal to provide
constitutional due process, the Plaintiffs, have



    a.    been forced to pay inspection fees out of fear of
prosecution;

    b.    been forced to take off time from work and/or other
activities and/or spend money to have to defend against the City;

c.   been forced to pay unlawful fines out of fear of continued levy (and/or possible jail time); and/or

d.   been forced to perform repairs on property for items not required by the IPMC at the mere whims of the Code Officials.

120.  Given this manner and the form of the City's and their Agent's administration of the IPMC, Plaintiffs have been deprived of their due process right to a meaningful opportunity to be heard.

121.  As a direct and proximate result, Plaintiffs have incurred monetary and other damages and thus Plaintiffs seek damages against Defendant(s) (including costs and attorney fees) for Defendant(s) violating Plaintiffs' due process rights.

Wherefore, based on this Count, Plaintiffs respectfully ask this Court to award them damages in an amount to be determined against Defendants, together with exemplary and/or punitive damages, interest, costs and attorney fees.

## COUNT V - DECLARATORY RELIEF

122.  Plaintiffs incorporate all other paragraphs of this Complaint into this Count by reference.



123. An actual controversy exists between Plaintiffs and Defendants regarding Defendants' administration of the IPMC and City Code in violation of clearly established constitutional rights.

124. Accordingly, Plaintiffs are entitled to a declaration of their rights to due process in the context of the IPMC and City Code processes related to inspections, appeals, and obtaining Certificates of Occupancy, and thus Plaintiffs ask the to Court order that Defendants must comply with the procedural due process requirements set forth in the U.S. Constitution; the Michigan Constitution and/or the IPMC, including Plaintiffs' right to avoid a warrantless search without probable cause established by a neutral and detached magistrate, and provide Plaintiffs with a meaningful opportunity to be heard through an appropriate appeal notice, appeal hearing, and other due process requirements as set forth in the IPMC.

Wherefore, Plaintiffs respectfully ask the Court to:

a.     declare their due process rights, in the context of the IPMC and City Code processes related to inspections, appeals, and obtaining Certificates of Occupancy;

b.     order that Defendants must comply with the procedural due process requirements set forth in the U.S. Constitution; the Michigan



Constitution and/or the IPMC, including the right to avoid a warrantless search without probable cause established by a neutral and detached magistrate; and

c. order Defendants to provide Plaintiffs with a meaningful opportunity to be heard through an appropriate appeal notice, appeal hearing, and other due process requirements as set forth in the IPMC.

## COUNT V - INJUNCTIVE RELIEF

125. Plaintiffs incorporate all other paragraphs of this Complaint into this Count by reference.

126. Defendants continue to issue and enforce inspection orders in direct violation of the constitutional due process requirements of the 4th, 5th and/or 14th Amendments to the United States Constitution; Article I, Sections 11 and/or 17 of the Michigan constitution; the IPMC and the City's Code.

127. Plaintiffs are still being denied their right to challenge the application of the Code as set forth in the IPMC and the City's Code.

128. Unchecked, Defendants will continue to issue court tickets to Plaintiffs for failing to comply with the City's deficiency reports under the IPMC that are illegally issued and administered. As such, without an



METRO DETROIT
LITIGATION GROUP

injunction, the City will continue to reap an illegal windfall and continue to violate clearly established constitutional rights.

129.   Given these circumstances, the losses to the named Plaintiff and others similarly situated are imminent such that Plaintiffs are entitled to injunctive relief and an order stopping Defendants from their illegal and unconstitutional practices including their Certificate of Occupancy Scheme as described above.

Wherefore, based on the foregoing, Plaintiffs respectfully ask this Court to issue an injunction stopping Defendants from continuing their illegal and unconstitutional practices including their Certificate of Occupancy Scheme as described above.

## COUNT VI - VIOLATIONS OF 42 USC §1983

130.   Plaintiffs incorporate all other paragraphs of this Complaint into this Count by reference.

131.   42 USC §1983 provides for civil liability for deprivation of any right, privileges and immunities carried by the constitution and the laws of the United States and/or the State of Michigan pursuant to the carrying of custom and/or practice of the said governmental unit.



METRO DETROIT
LITIGATION GROUP

132. As was outlined above, Plaintiff and others similarly situated, have

    a.    the constitutional right to be protected from warrantless searches of their property; and/or

    b.    the procedural due process right to challenge or otherwise appeal a determination of the City's Code Official before any enforcement or court action was taken; and/or

    c.    the constitutional right to rent, occupy, use and/or lease their property without interference by Defendants;

133. At all material times, Defendants were acting under color of law and under the custom and practice of their respective governmental units.

134. By

    a.    requiring Plaintiff and others similarly situated to consent to warrantless searches in order to obtain a Certificate of Occupancy to occupy, use, rent, lease or sell their property(ies); and/or

    b.    not notifying Plaintiff and others similarly situated of their right to appeal a determination of the City's code official before any enforcement or court action was taken; and/or



METRO DETROIT
LITIGATION GROUP

c.    not complying with the IPMC and/or the City Code; and/or

d.    through the other actions described in this Complaint, Defendants, under color of law, willfully and wantonly eliminated and/or disregarded Plaintiff's constitutional rights including those conferred under the 4th and/or 5th Amendments to the United States Constitution (as applied to the states through the due process clause of the 14th Amendment), the 14th Amendment to the United States Constitution and Article I, Sections 11 and 17 of the Constitution of the State of Michigan, and/or other laws of the United States and/or the State of Michigan.

135.   As was set forth above, Defendants then proceeded to prosecute and collect fines and fees from Plaintiffs in violation of Plaintiffs' due process rights.

136.   Through their acts, Defendants have deprived Plaintiffs of their property and related rights and are thus liable to Plaintiffs pursuant to 42 USC §1983 that provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other



METRO DETROIT
LITIGATION GROUP

proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

137.   Defendant City is further liable to Plaintiffs for the individual actions of its employees based on the doctrine of *respondeat superior*.

138.   Defendants acted with deliberate indifference with regard to their actions and/or omissions described herein.

139.   Defendants do not have qualified immunity for their actions as any reasonable person and/or employee of Defendant(s) should have known that such actions were in violation of the rights conferred to Plaintiffs under the 4th and/or 5th Amendments of the United States Constitution (as applied to the states through the due process clause of the 14th Amendment), the 14th Amendment to the United States Constitution; and Article I Sections 11 and 17 of the Constitution of the State of Michigan and/or other laws of the United States and the State of Michigan.

140.   As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, in addition to costs and attorney fees.



141.  42 USC §1988 provides that the Court may assess attorney fees in an action to enforce a provision of 42 USC §1983.

WHEREFORE, based on this Count, Plaintiff asks this Court to determine that Defendants violated Plaintiffs' civil rights in violation of 42 USC §1983 and to award Plaintiffs damages in an amount to be determined against (including costs and attorney fees) for Defendant(s) violating Plaintiffs' due process rights in violation of 42 USC §1983, together with exemplary and/or punitive damages, interest, costs and attorney fees.

### COUNT VII - CLASS ALLEGATIONS

142.  Plaintiffs incorporate all other paragraphs of this Complaint into this Count by reference.

143.  The named Plaintiff and the putative class members have suffered and continue to suffer similar harm due to having their properties inspected without a search warrant and/or taken by the City without minimum due process.  After not receiving adequate notice or a meaningful opportunity to be heard, the named Plaintiff and the putative class members are then faced with multiplying levies and/or possible jail time for failure to pay improperly issued fines.



METRO DETROIT
LITIGATION GROUP

144. **Class Definition**. Plaintiffs seek to certify the following classes:

a. **Class I** - All persons or entities who have been forced to have warrantless searches of their property in violation of both the 4th Amendment to the United States Constitution (as applied to the states through the 14th Amendment) and Article I, Section 11 of the State of Michigan Constitution in order to use, rent, occupy and/or sell their property.

b. **Class II** - All persons or entities who paid money to the City for warrantless inspection fees.

c. **Class III** - All persons or entities who have been prosecuted by and/or fined by the City for failing to have a Certificate of Occupancy.

d. **Class IV** - All person or entities who have not been informed of their right to appeal the City's decisions regarding repairs and/or maintenance to their property which forced them to make repairs to their property that were not required under the Code in order to avoid prosecution in court.

e. **Class V** - All persons or entities who have not been able to rent, occupy or sell their property because of the requirement to



METRO DETROIT
LITIGATION GROUP

obtain a Certificate of Occupancy from the City following a warrantless search and/or as a result of delays in obtaining a certificate of occupancy as a result of the City's unlawful enforcement of its Code and the IPMC.

   f. **Class VI** - All persons or entities who have made repairs pursuant to a deficiency report issued by the City without being provided with notice of their ability to appeal such determination to an impartial board.

145. **Numerosity.**  The proposed classes are so numerous that joinder of all members is impracticable. While the exact number of class members is not now known, the named Plaintiff believes the class number is in the thousands. These members may be readily identified from Defendants' own records.

146. **Commonality.** There are questions of law or fact common to the members of the class that predominate over questions affecting only individual members.

147. Among the questions of law or fact common to the class are the following:

   a. Does the City have the right to mandate and conduct warrantless searches of property without probable cause that a



crime was committed and/or that the property owner / occupant committed the crime?

b.      Does the City have the right to charge property owners who object to warrantless searches?

c.      Does the City have the right to prevent property owners from using, occupying, renting, leasing and/or selling their property if the property owners do not obtain a Certificate of Occupancy because they will not consent to a warrantless search and/or because they refuse to comply with the City's requirement(s) for repairs that property owners contest when the City does not follow the proper procedure to entertain such contests.

d.      Does the City have the right to prosecute individuals and/or entities who do not obtain a Certificate of Occupancy because they will not consent to a warrantless search and/or because they refuse to comply with the City's requirement(s) for repairs that property owners contest when the City does not follow the proper procedure to entertain such contests.



e.    Did the City provide proper notice of appeal as required by the IPMC before attempting to enforce the IPMC and/or the City Code?

f.    Did the City's failure to notify Plaintiffs of their right to appeal deprive Plaintiffs a meaningful opportunity to be heard and the minimum due process required by its own Code, and the Michigan and United States Constitutions?

148.    **Typicality**. The harm suffered by the named Plaintiff is typical of the harm suffered by other class members differing only in amount. Accordingly, the claims of the named Plaintiff are the same as those of the other class members. Resolution of these common questions will determine the liability of Defendant to the named Plaintiff and the class members in general. Thus, the claims properly form the basis for class treatment in this case.

149.    Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all members of the class and Defendants.

150.    **Adequacy of Representation**. The represented parties will fairly and adequately assert and protect the interest of the class. The named Plaintiff has already demonstrated its willingness to pursue this



litigation on Plaintiff's own behalf, and have no known conflicts with the class members.

151.   The named Plaintiff's counsel will also fairly and adequately represent the interest of the class.  Attorney Stuart Sandweiss is experienced in complex litigation, has practiced before this Court for nearly 18 years, and is well versed in the facts and substantive law underlying the Plaintiff's claims.  Mr. Sandweiss has further successfully prosecuted previous class actions that were resolved prior to class certification.

152.   This class action is maintainable under Fed. R. Civ. Proc. 23.

153.   The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

154.   The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct.

155.   The prosecution of separate actions by or against individual members of the class would further create a risk of adjudications with



respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

156.   The party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final equitable, injunctive or corresponding declaratory and monetary relief is appropriate respecting the class as a whole. Specifically, Defendants have deprived, and continue to deprive, Plaintiffs of their rights as were outlined above, including, but not limited to, their 4th Amendment right to be free from warrantless searches (as applied to the states through the 14th Amendment), their right to appeal a deficiency notice of deficiency in violation of the due process rights of the class and their right to use, occupy, rent, lease and/or sell their property.

157.   The questions of law or fact common to class members predominate over any questions affecting only individual members, and as such a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

158.   As a class action this case will be more manageable than the prosecution of separate actions in various forums and venues.



159. In view of the complexity and the importance of the constitutional issues and expense of the litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

160. It is probable that the amount that may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

161. Plaintiff is not aware of any members of the proposed class that have filed similar litigation, nor is Plaintiff aware of any pending similar litigation in which the City and/or its employees are Defendants.

162. The class action is the appropriate method for the fair and efficient adjudication of the controversy. The legal and factual bases for the Plaintiff's claims are the same as for the claims of all class members. The only difference between individual claims is the severity of the harm and resulting damages. Adjudicating this case on a class wide basis will promote substantial judicial economy by eliminating the likelihood of multiple cases (perhaps thousands) turning on the same questions of law and fact. The class action will also provide the proposed class members with their only meaningful avenue for relief, due to the economy of spreading their litigation costs, thereby reducing each individual's



METRO DETROIT
LITIGATION GROUP

expenses over the class and enabling counsel to pursue the litigation by aggregating the claims. Further, the class action will save the Defendants the burden of defending multiple suits in multiple forums.

Wherefore, based on the foregoing, Plaintiff respectfully asks this Court to:

a.     determine that this action is proper to be maintained as a class action pursuant to Fed. R. Civ. Proc. Rule 23;

b.     certify the aforementioned Classes I - VI;

c.     appoint the named Plaintiff's counsel to represent the classes;

d.     order Defendants to produce discovery to identify all of the potential class members; and

d.     ultimately order Defendant to pay Plantiffs' costs, expenses and reasonable attorney fees.

Dated: March 14, 2018                    Respectfully submitted,

**METRO DETROIT LITIGATION GROUP**



**By:  STUART SANDWEISS (P60921)**
ATTORNEYS FOR PLAINTIFFS
18481 West Ten Mile Road, Suite 100
Southfield, Michigan  48075
(248) 559-2400   Fax (800) 577-1716
stuart@metrodetroitlitigation.com

## LIST OF EXHIBITS

1    Code Section 7-201

2    Code Sections 7-466 - 7-468

3    Violation Notice

4    First Inspection Report - 8639 Columbia

5    Eviction Order

6    Third Inspection Report (which incorporates the Second Inspection Report)

7    Letter to Mohamed Sobh requesting an Appeal



METRO DETROIT
LITIGATION GROUP

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**BUNTING PROPERTIES I, INC.**
Plaintiff,
on behalf of itself and all others
similarly situated

Case No.
Hon.

**v.**

**CITY OF DEARBORN HEIGHTS,**
a municipal corporation;
**MOHAMED SOBH**, Director of the City of
Dearborn Heights Building and Engineering Department;
and
**JOHN OR JANE DOE**, code official(s)
Jointly and Severally,
Defendants

_____/

**JURY DEMAND**

Plaintiffs demands a trial by jury.

Dated: March 14, 2018                Respectfully submitted,

**METRO DETROIT LITIGATION GROUP**

By:  STUART SANDWEISS **(P60921)**
ATTORNEYS FOR PLAINTIFFS
18481 West Ten Mile Road, Suite 100
Southfield, Michigan  48075
(248) 559-2400   Fax (800) 577-1716
stuart@metrodetroitlitigation.com



METRO DETROIT
LITIGATION GROUP

Sec. 7-201. - Adoption of International Property Maintenance Code 2000.

(a)     *In general.* As more fully described in section 7-202, the city adopts the "International Property Maintenance Code" as its code for the maintenance of property.

(b)     *Purpose.* This code is to establish minimum regulations governing the conditions and maintenance of all property, buildings, and structures in the city as well as to provide standards and procedures to ensure appropriate enforcement. This code is necessary to protect and to promote the health, safety and welfare of the city, its residents, and all others who have any interest in the city.

(c)     *Definitions.* For purposes of sections 7-201, 7-202, and 7-203, the following terms have the following meanings:

*Code.* The words "Code" or "this Code" shall mean the Code of Ordinances of the city, as designated in section 1-2 of this Code.

*Code.* The words "code", "this code", or "property maintenance code" shall mean the "International Property Maintenance Code" as adopted and modified by section 7-202.

*International Property Maintenance Code.* The term "International Property Maintenance Code" shall mean the 2000 Edition of the booklet published by the International Code Council, Inc. entitled "International Property Maintenance Code 2000" on its cover and "2000 International Property Maintenance Code" on the bottom of its pages.

*Ordinance.* The words "ordinance" and "this ordinance" mean the full text of Ordinance H-01-24 and not simply the text of sections 7-201, 7-202, and 7-203.

(d)     *Adoption and publication of a summary of the ordinance.*

(1)     *In general.* Pursuant to MCL § 117.3(k), the city shall publish a true copy of this ordinance. Including the summary of the International Property Maintenance Code set forth at section 7-203, instead of publishing a true copy of this ordinance and a true copy of the International Property Maintenance Code.

(2)     *Right to inspect or obtain.* The office of the city clerk is the location where complete, true copies of this ordinance; the International Property Maintenance Code; and sections 7-201, 7-202, and 7-203 of the Code may be inspected or obtained. In compliance with state law, these documents are records of a public body that are to be available for inspection by, and distribution to, the public at all times. The office of the city clerk is located at 8045 Fenton, Dearborn Heights, Michigan 40127.

(e)     *Relationship of this ordinance to other provisions of the Code.*

(1)     Chapter 1 of the code regarding "Administration" shall take precedence relative to and shall prevail over all other Code provisions pertaining to the same matters, including, but not necessarily limited to, the following provisions under chapter 7 of the Code:

a.     Article VII. Blight. Sections 7-301 through 7-400.

b.     Article IX. Minimum Housing Standards. Division 2. Inspection, sections 7-466 through 7-480.

c.     Article IX. Minimum Housing Standards. Division 3. Enforcement, sections 7-481 through 7-500.

d.     Article IX. Minimum Housing Standards. Division 12. Unfit Dwellings and Condemnation, sections 7-651 through 7-700.

(2)     The provisions of this Code are intended to establish higher standards than the Housing Law of Michigan and the other provisions of this Code. The standards of this Code shall take precedence relative to and shall prevail over all other inconsistent Code provisions pertaining to the same matters, including, but not necessarily limited to, the following provisions under chapter 7 of the Code:

     a.   Article VII. Blight. Sections 7-301 through 7-400.

     b.   Article IX. Minimum Housing Standards. Division 1. Generally through Division 9. Roominghouses. However; to the extent that there is no conflicting standard, the other provisions of the Code remain in effect.

(3)   In all other respects, this ordinance and all other provisions of the Code are to be harmonized to the greatest extent possible. If not possible, the provisions of this Code shall take precedence to and prevail over conflicting Code provisions.

(Ord. No. H-01-24, § I, 1-22-02)

Sec. 7-202. - Adoption of and modifications to text of the international Property Maintenance Code.

(a)   Substantive text of the code as modified and operative in the City. Starting with its Table of Contents at page vii and continuing through the end of its Index at page 32, the International Property Maintenance Code is hereby adopted as the property maintenance code of the city; and each and all of the regulations, provisions, penalties, conditions, and terms of the International Property Maintenance Code are hereby referred to, adopted, and made a part hereof, as if fully set out in this [section], with the additions, insertions, deletions, and changes that follow:

(1)   At 101.1 Title., the following is inserted: City of Dearborn Heights

(2)   The text for 102.3 Application of other codes. is deleted and replaced with the following:

102.3 Application of other codes. Except as otherwise provided in this code or the Code, repairs, additions or alterations to a structure, or changes of occupancy, shall be done in accordance with the procedures and provisions of the Michigan Building Code, the Michigan Plumbing Code, the Michigan Mechanical Code, Chapter 36 of the Code, and the National Electrical Code. To the extent of any conflict between a Michigan code and any international or general code, the provisions of the Michigan code prevail. Nothing in this code shall be construed to cancel, modify, or set aside any provision of Chapter 36 of the Code.

(3)   After the text of 102.8 Requirements not covered by code, the following new section is added:

102.9 Occupancy permits. It shall be unlawful for any person to hereafter occupy or reoccupy or for any owner or agent thereof to aid, abet, assist, cooperate, help or permit the occupation or reoccupation of any property, building, addition thereto or part thereof, or to sell or transfer any property upon which any use is conducted, whether for residential, commercial, or industrial purposes, without first obtaining a certificate of occupancy issued by the Department of Building and Engineering. The certificate of occupancy shall state the conditions of and the limitations to the proposed occupancy.

(4)   The text for 103.1 General, 103.2 Appointment, and 103.3 Deputies, is deleted and replaced with the following:

103.1 General. The departments assigned the role of enforcing this code are the Department of Building and Engineering and the Department of Ordinance Enforcement. The director or other executive official in charge of each such department shall be known as the code official for purposes of this code. The authority of the Department of Ordinance Enforcement and of its director or other executive official in charge of it to enforce this code shall be subject to the limitations contained in Section 2-901.

103.2 Appointment. As heads of City departments, each code official's appointment as well as terms and conditions of employment shall be governed by the applicable provisions of the Charter.

103.3 Deputies. In accordance with the Charter and the Code, deputy code officials as well as other related technical officers, inspectors, and other employees may be appointed and/or designated to enforce the code by either code official.

(5)   The text for 103.6 Fees. is deleted and replace with the following:

103.6 Fees. The fees for activities and services performed by the department in carrying out its responsibilities under this code shall be as adopted by resolution of the City Council from time to time.

(6)  The text for 106.3 Prosecution of violation. is deleted and replaced with the following:

106.3 Prosecution of violation.

106.3.1 In general. Except as set forth at Section 106.3.2 below, any person failing to comply with a notice of violation or order served in accordance with Section 107 shall be responsible for a municipal civil infraction, and the violation shall be deemed a strict liability offense.

106.3.2 Misdemeanors. A person who violates any of the sections of this code set forth under this Section 106.3.2 shall be guilty of a misdemeanor, and the violation shall be deemed a strict liability offense: (1) Section 108.4.1 (second sentence); (2) Section 108.5; (3) Section 109.1 (last sentence).

(7)  The text for the paragraph numbered "3." under 107.2 Form. is deleted and replaced with the following:

3.  Include a statement and description of the violation or violations and a statement of why the notice is being issued.

(8)  After the text of 107.3 Method of service., the following section is added:

107.3.1 Service of notice to "last known address". An owner, agent, lessee, or party-in-interest is served at his/her/their/its "last known address" when he/she/they/it is served with the notice at the address registered with the City pursuant to Section 125.525 of the Michigan Compiled Laws. If such a person is not registered with the City pursuant to said provision of State law, the notice is served at the person's "last known address" when it is served on each owner or other party-in-interest in whose name(s) the subject property appeared on the last local tax assessment records at the address(es) set forth in the last local tax assessment records.

(9)  After the text of 109.1 Imminent danger., the following sections are added:

109.1.1 Exemptions. The following individuals and types of individuals are exempt from the last sentence of Section 109.1 to the extent that they are at the premises while acting within the scope of their employment or agency: (1) City officials, employees, and agents; (2) law enforcement officials and employees of any level of government: (3) fire and/or other emergency personnel whether in government service or otherwise; (4) utility personnel.

109.1.2 Limitations. Individuals not otherwise exempt from the last sentence of Section 109.1 shall only enter a structure posted as described in Section 109.1 after receiving the written consent of the code official and even then subject to any conditions specified by the code official in the code official's written consent.

(10)  Immediately after the text of 110.3 Failure to comply., the following is added as part of the same paragraph:

Absent imminent danger or the need for emergency repairs, 20 days shall be the minimum time given to an owner to comply with a demolition order of the code official under this Section 110.

(11)  The entire text for 111.2 Membership of board. (including Sections 111.2, 111.2.1, 111.2.2, 111.2.3, 111.2.4, and 111.2.5) is deleted and replaced with the following:

111.2 Applicability of this section. Depending on the nature of the decision, notice, or order, the appropriate "board of appeals" could be one or more of these three entities: Zoning Board of Appeals, Building Board of Appeals, and/or Demolition Board of Appeals.

111.2.1 Zoning Board of Appeals. Section 111 is completely inapplicable to appeals to the Zoning Board of Appeals ("ZBA"). The time for taking an appeal to the ZBA, the ZBA's appeal procedures, the membership of the ZBA, and all other rules governing the ZBA are set forth elsewhere in this Code and in the laws of this State.

111.2.2 Building Board of Appeals. The Building Board of Appeals considers appeals regarding certain building standards addressed in this code and related codes, but not matters addressed under Sections 108, 109, and 110 of this code. Only Section 111.1 of this Section 111 governs any appeal to the Building Board of Appeals under this code. All other rules governing the Building Board of Appeals are set forth elsewhere in this Code and in the laws of this State.

111.2.3 Demolition Board of Appeals. The Demolition Board of Appeals considers appeals pertaining to matters addressed under this code at Section 108 Unsafe Structures and Equipment, Section 109 Emergency Measures, and Section 110 Demolition. Section 111 in its entirety applies to the Demolition Board of Appeals. Code Section 7-701 shall govern the membership, terms of appointment, election of officers, quorum, compensation, and other attributes of the Demolition Board of Appeals.

(12)   The last sentence of the text of 111.4 Open hearing. is changed to read:

A quorum shall consist of a majority of the board membership.

(13)   111.5 Postponed hearing. is deleted.

(14)   The text for 111.7 Court review. is deleted and replaced with the following:

111.7 Court review. The property owner aggrieved by any final decision or order of the board may appeal the decision or order to the Circuit Court by filing a petition for an order of superintending control within 20 days from the date of the decision or order.

(15)   The following text is added to the text of 111.8 Stays of enforcement:

Appeals board decisions or orders (other than those addressing Imminent Danger) shall not be acted upon by the City until at least 20 days have passed from the date of the decision or order in order to give the affected property owner(s) time to appeal. This limitation may be waived if all affected property owners consent to the City acting upon the decision or order.

(16)   The text for 201.3 Terms defined in other codes. is deleted and replaced with the following:

201.3 Terms defined in other codes. Where terms are not defined in this code and are defined in the Michigan Building Code or International Building Code, International Fire Code, Chapter 36 of the Code, International Zoning Code, Michigan Plumbing Code or International Plumbing Code, Michigan Mechanical Code or International Mechanical Code, Michigan Residential Code, National Electrical Code, ASME A17.1 or the ICC Electrical Code, such terms shall have the meanings ascribed to them as in those codes. To the extent of any conflict between a Michigan code and an international, national, or general code, the definitions in the Michigan code will prevail.

(17)   Under SECTION 202 GENERAL DEFINITIONS, the following is inserted after the text defining "BEDROOM":

CODE. The Code of Ordinances of the City of Dearborn Heights.

(18)   Under SECTION 202 GENERAL DEFINITIONS directly after the text defining "RUBBISH", the following is added:

Without limitation, this term shall also include any item or condition described as blight, a cause of blight, and/or a blighting factor under Section 7-302 of the Code.

(19)   The text for 302.4 Weeds. is deleted and replaced with the following:

The provisions of Chapter 33, Article III of the Code shall govern the standards for weeds, grass and vegetation. The provisions of Chapter 33, Article III of the Code shall also govern the procedures for enforcement of the standards set forth in those provisions, but only to the extent that the procedures are actually stated. The provisions of Chapter 33, Article III of the Code and the provisions of this code shall be construed to afford the City the greatest range of remedies to address problems associated with weeds, grass and vegetation. The provisions of Chapter 33, Article III of the Code shall only be interpreted to prevail over the provisions of this code to the extent that the provisions are actually in conflict.

(20)    Under 303.14 Insect screens., the following words are inserted in the following order in the two (2) places referring to "[DATE]": "April" and "November".

(21)    After 502.4.1. Drinking facilities., the following new sections are added:

502.5 Laundry waste outlet. Every dwelling unit shall be provided with a laundry waste outlet or equipment, either within the unit or, in the case of multiple housing, in a public space within the building for use of all occupants.

502.6 Garbage disposal. Every dwelling unit shall have a garbage disposal unit in the waste line of the kitchen sink which has been properly installed in a manner approved by the Building and Engineering Department.

(22)    Under both 602.3 Heat supply. and 602.4 Occupiable work spaces., the following words are inserted in the following order in the two (2) places referring to "[DATE]": "October" and "May".

(23)    At the very end of 604.2 Service., "60 amperes" is deleted and replaced with "100 amperes".

(24)    The text for 605.3 Lighting fixtures. is deleted and replaced with the following:

605.3 Lighting fixtures. In order to illuminate all such areas, every room, hall, stairway, and exterior doorway shall be provided with a lighting fixture in operating condition. The fixture shall be controlled by a wall switch at the area's entrance, or by wall switches at the area's entrances if the area has more than one entrance.

(b)   Effect of section 7-203 on text as adopted and modified. The summary set forth at section 7-203 is not meant to have any effect on the meaning of the text of the International Property Maintenance Code as adopted and modified as set forth at subsection (a) of this section 7-202.

(Ord. No. H-89-14, § I, 10-24-89; Ord. No. H-01-24, § I, 1-22-02; Ord. No. H-14-06, § I, 9-23-14)

Sec. 7-203. - Summary of International Property Maintenance Code as adopted and modified.

(a)   *Purpose.* A complete true copy of this ordinance is to be published in order to comply with the requirements of state law regarding the publication of an ordinance before it becomes operative. The summary contained at subsection (b) of this section 7-203 is meant to make sure that a summary of the International Property Maintenance Code as adopted and modified at section 7-202 is published in ensure that section 7-303 becomes operative. A complete true copy of this ordinance is to be published to ensure that all other portions of this ordinance become operative. To the extent that the city has engaged in duplicative publication, no method of publication has been utilized to exclude the effectiveness of any other method of publication. Rather, the purpose of using these methods of publication has been to ensure that all provisions of this ordinance become operative even if efforts to ensure effectiveness have potentially been redundant.

(b)   *Complete summary.* The city has adopted the Dearborn Heights Property Maintenance Code ("code") to protect and promote the health, safety, and welfare of the city, its residents, and all others who have an interest in the city. The code is based on the 2000 Edition of the International Property Maintenance Code published by the International Code Council, Inc. By virtue of the adopting ordinance ("ordinance"), the city has modified the published version of the International Property Maintenance Code to make it the city's code for the maintenance of existing structures, buildings and property. Thus, the code establishes minimum regulations and standards for such property as well as procedures to ensure appropriate enforcement.

The following is a brief summary of the code and the ordinance. They provide for the following things among others:

(1)    Adoption of the International Property Maintenance Code 2000 Edition as modified by the ordinance as the property maintenance code of Dearborn Heights.

(2)    The purpose for adopting the code and the ordinance.

(3)    The definitions of various terms within the code and the ordinance.

(4)    The adoption and publication of a summary of the ordinance to comply with state law allowing for the publication of a summary of ordinances as adopted.

(5)    The right of all individuals to inspect and to obtain a copy of the code and the ordinance at the office of the city clerk, 6045 Fenton, Dearborn Heights. Michigan 40127.

(6)    The preeminence of chapter 1 of the code pertaining to "Administration" over other portions of the Dearborn Heights Code ("Code") particularly with respect to enforcement, procedures, unfit dwellings, unsafe structures and equipment, emergency measures, demolition, and the means of appealing the decisions of city officials enforcing the code.

(7)    The code and the ordinance setting higher standards than the Housing Law of Michigan and other portions of the Code, but those portions continuing to supplement the code to the extent that there is no conflict.

(8)    The application of other related codes and the Code to repairs, additions or alterations to a structure, or changes of occupancy.

(9)    The requirement that certificates of occupancy must be obtained.

(10)    The department enforcing the code being the department of building and engineering: Its director or other executive official being the "code official"; and other employees being able in enforce the code.

(11)    Fees for activities and services performed to enforce the code being prescribed from time to time by city council resolution.

(12)    In general, violations of the code being municipal civil infractions.

(13)    Violation of the code involving the removal or defacing of placards, prohibited occupancy, and unlawful entry being misdemeanors.

(14)    The duties and powers of the code official, including rule-making authority, inspections, right of entry, identification, notice and orders, department and records, and coordination of inspections.

(15)    Approvals, including modifications; alterative materials, methods and equipment; required testing; and materials and equipment reuse.

(16)    Violations, including notice of violation, prosecution of violation, violation penalties, and abatement of violation.

(17)    Notices and orders, including notice to owner or to person(s) responsible, form of notices and orders, method of service, penalties, and transfer of ownership.

(18)    Unsafe structures and equipment, including definitions of unsafe structures, unsafe equipment, structure unfit for human occupancy, and unlawful structure; closing of vacant structures; notice; placarding; placard removal; and prohibited occupancy.

(19)    Emergency measures, including imminent danger, temporary safeguards, closing streets, emergency repairs, costs of emergency repairs, and hearing.

(20)    Demolition, including notices and orders, failure to comply, minimum time to comply relative to demolition, and salvage materials.

(21)    Means of appeal, including possible appeals (as may be pertinent) to zoning board of appeals as provided outside of the code, building board of appeals as generally provided outside of the code, and/or demolition board of appeals as provided in the code.

(22)    Appeals to demolition board of appeals as otherwise provided by the Code, but subject to court review as in the code.

(23)   Stays of enforcement in some cases to allow for appeals in the demolition board of appeals and/or circuit court; no stay where imminent danger.

(24)   General requirements, including owners' responsibilities to maintain; requirement that vacant structures and land be maintained; maintenance of exterior property areas, exterior structures, and interior structures; rubbish and garbage; and extermination.

(25)   Requirements for light, ventilation, and occupancy limits.

(26)   Requirements for plumbing facilities and fixtures.

(27)   Requirements for mechanical and electrical facilities and equipment.

(28)   Requirements for fire safety.

(29)    Referenced standards through the American Society of Mechanical Engineers and the International Code Council.

(30)   Table of contents and index.

(Ord. No. H-01-24, § I, 1-22-02)

Sec. 7-466. - Right of entry, access.

(a)    The director of building and engineering, or his or her designee, hereby authorized and directed to make inspections to determine the conditions of dwellings, dwelling units, rooming units and premises located within the city, in order that [he/she] may perform [his/her] duty of safeguarding the health and safety of the occupants of dwellings and of the general public. For the purpose of making such inspections, the director of building and engineering, or his or her designee, is hereby authorized to enter, examine and survey, at any reasonable time, all dwellings, dwelling units, rooming units and premises. The owner or occupant of every dwelling, dwelling unit, rooming unit, or the person in charge thereof, shall give free access to such dwelling, dwelling unit or rooming unit and its premises, at any reasonable time, for the purpose of making such inspection, examination and survey.

(b)    The building and engineering director, or his or her authorized representative, shall inform a tenant or occupant that the tenant or occupant has the right to refuse access or entry by an inspector who does not have a search warrant.

(c)    Upon being refused entry or access for inspection, the building and engineering director, or his or her authorized representative, who has probable cause to believe this section is being violated, may obtain a search warrant for the limited purpose of gaining entry in order to satisfy his or her obligations under this section.

(d)    Should it become necessary to obtain a search warrant in order to enforce the inspection provisions of this section, the city shall be authorized to request the court to assess costs rationally related to the pursuit of such warrant, but in no event to exceed two hundred fifty dollars ($250.00).

(Ord. No. H-95-7, § I, 11-14-95; Ord. No. H-96-13, § I, 10-22-96)

Sec. 7-467. - Certificate of occupancy.

(a)    It shall be a violation of this article for any person to occupy or reoccupy, or for any owner or agent thereof to permit the occupation or reoccupation of, any building or addition thereto, or part thereof, for any purpose, until a certificate of occupancy has been issued by the building and engineering department. The certificate of occupancy so issued shall state that the occupancy complies with all the provisions of this article, as amended.

(b)    Application for the certificate of occupancy containing the number and names of all occupants who will occupy the premises, together with a fee to be determined by city council resolution from time to time, for each dwelling unit occupied, shall be filed with the director of building and engineering. Upon receipt of the application and fee, the director or his or her designee shall inspect the premises within ten (10) business days and, if approved, issue a certificate of occupancy.

(Ord. No. H-95-7, § I, 11-14-95; Ord. No. H-96-12, § I, 10-22-96)

Sec. 7-468. - Permit for sales of real estate required.

(a)    It shall be a violation of this article for any owner, real estate firm, broker or salesman to consummate a sale of real property until such owner, real estate firm, broker or salesman has been issued a permit by the building and engineering department.

(b)    Application for such permit shall contain the names of the purchaser and seller and the address of the property to be sold.

(Ord. No. H-95-7, § I, 11-14-95)



# Ordinance Department

**Jack McIntyre**
 Director

**Daniel S. Paletko**
 Mayor

06/15/2017

**BUNTING PROPERTIES I INC**
OR PRESENT OWNER
**18481 WEST TEN MILE RD STE 100**
**SOUTHFIELD MI 48075**

Regarding property at:

33 008 01 0042 000

8639 COLUMBIA

Dear Property Owner,

Please let this letter serve as your Notice of Violation concerning the above-referenced property. ( one was also left at the property in question )  The Notice of Violation has been sent to you, because the above-referenced property does not comply with Sections 33-51 through 33-56 of the Dearborn Heights Code of Ordinances.

Sections 33-51 through 33-56 of the Dearborn Heights Code of Ordinances pertain to noxious weeds, grass and vegetation.  Among other things, these provisions require the owner of record of any residential or commercial property ( including vacant lots ) to keep all grass, weeds and vegetation at a height of six (6) inches or less.  If the grass, weeds and vegetation at the above location exceed this height, the City and its contractor are authorized by these provisions to cut and remove the grass, weeds and vegetation as well as to haul away any debris.

Any actions that the City or its contractors must take to bring the property into compliance will be at the property owner's expense.  Plus, the expenses will become a lien against the property if they are not paid in a timely manner.

These expenses can be quite substantial.  At a minimum, the fee is $105.00; and it can be a great deal more based on the area of the lot.  Plus, administrative fees are added to the fees charged.  Further, additional fees are charged for the removal of any debris.

Keeping your lawn at an acceptable height and free from weeds, grass, vegetation and debris is your responsibility as a property owner in our community.  We need your cooperation to help make the City look good during this season and throughout the year.  Thank you for your support and cooperation.

Ordinance Division

**RESIDENTIAL BUILDING**
**ELECTRICAL**

**CITY OF DEARBORN HEIGHTS**
Department of Building and Engineering
6045 Fenton, Dearborn Heights, MI 48127
**313-791-3470**

APPL. DATE

INSP. DATE  7/25/16
Mon. 12-4

**REFERENCE: 2012 International Property Maintenance Code (Building)**

| # | Category | Install | Remove | Replace | Repair | Paint | Clean | Additional Comments |
|---|----------|---------|--------|---------|--------|-------|-------|---------------------|
| 1 | Concrete: City Sidewalk - Approach | | | ✓ | | | | ( PERMIT ) |
| 2 | Service Walk - Driveway | | | ✓ | | | | |
| 3 | Roof | | | | | | | |
| 4 | Gutters - Downspouts - Trim - Siding | | | | | | | |
| 5 | Doors: Prime -  Storm | | | | | | | |
| 6 | Step: Front, Rear, Side | | | | | | | |
| 7 | Windows: Prime - Screen | | | | | | | |
| 8 | Storm Doors: Front - Rear - Side | | | | | | | |
| 9 | Change Dbl Key Cylinder: F - R -S | | | | | | | |
| 10 | Garage: Walls/ Trim/ Doors/ Floor | | | | | | | |
| 11 | Roof / Windows | | | | | | | |

12 Install Carbon Monoxide / Smoke Detectors: All Bedrooms  - Hall Outside Bedrooms  - All Levels

13 Will accept **NOTARIZED** statement from Purchaser(s) accepting the following item # (s) "as is" _____

|  | FRONT ROOM / BEDROOM | KITCHEN | BATHROOM | BASEMENT | UPSTAIRS |
|--|---------------------|---------|----------|----------|----------|

**REPAIR:** _____

ADDITIONAL COMMENTS: _____

**PERMIT REQUIRED: YES** X **NO** _____ DATE 7-25-16 INSPECTOR BW FINAL DATE_____ INSPECTOR_____

**REFERENCE: 2011 National Electrical Code (Electrical)**

1. _____ Increase electrical service to minimum of three (3) wire 100 amperes.
2. _____ Provide additional duplex electrical receptacle(s) conveniently located: _____
3. _____ Install multiple switch control at head and foot of stair to:  Second Floor  /  Basement.
4. _____ Provide a separate wall mounted 20 ampere laundry circuit.
5. _____ Repair receptacle(s), wall switch(es), wall fixture(s), ceiling fixture(s) in AS   NOBDED
6. _____ Discontinue use of extension cords in lieu of permanent wiring in _____
7. _____ Install separate 20 ampere circuit for kitchen, supplying three (3) duplex outlets.
8. _____ Replace worn service entrance cable ___ Top & Bottom___ Riser ___ Meter Can ___ Ground Rod ___ Waterground.
9. _____ Ground kitchen and laundry outlets: _____ G.F.I. _____ Kitchen _____ Bathroom.
10. _____ Install garbage disposal.     10a. Wire garbage disposal to code _____.

**PERMIT REQUIRED: YES** X **NO** _____ DATE 7-25-16 INSPECTOR BW FINAL DATE_____ INSPECTOR_____

ADDITIONAL COMMENTS: _____

> These inspection reports for Building, Electrical, Mechanical, and Plumbing are valid for 6 months.  If any conditions change on the property, these inspection reports are considered null and void.  A re-inspection fee will be required if inspector is not able to enter the premises at time of appointment.

**COMPLIANCE REQUIRED BY CITY OF DEARBORN HEIGHTS BUILDING CODES**

When all corrections have been made, notify this Department to arrange for a final inspection before new occupancy. This inspection of the land use, plot use, exterior posture, and interior accessories of the structure is limited to the visual inspection only.  A certificate of approval is not a warranty or guarantee that there are not defects in the structure nor shall the City be held responsible for defects not noted in the inspection report. This inspection does not certify that the structure in question is not in violation of other code requirements not presently brought to the attention of the Building Department, warranties if desired are a private matter between the seller(s) and the buyer(s).

**ANY QUESTIONS ON THIS REPORT?  PHONE 313-791-3470 BETWEEN 8:30 - 9:00a.m.  OR 4:00 - 5:00p.m.**

**MECHANICAL &**
**PLUMBING**

**CITY OF DEARBORN HEIGHTS**
Department of Building and Engineering
6045 Fenton, Dearborn Heights, MI 48127
**313-791-3470**

RECEIPT# _____

APPL. DATE 7/25/16

Mon. 12-4

INSP. DATE _____

---

**REFERENCE: 2012 International Property Maintenance Code (Mechanical)**

1. _____ Thermostat / Registers - Secure _____ Replace _____.
2. _____ Install AGA type gas valve on: Furnace _____ Stove _____ Other  *W/HEATER*
3. _____ Run vent on: Furnace _____ Hot Water Heater _____ Dryer _____ to code.
4. _____ Have furnace heat exchanger tested by licensed contractor. Copy of report to inspector.
5. _____ Install chimney liner for: Furnace _____ Hot Water Heater _____.
6. _____ Make humidifier operable or remove.
7. _____ Condensate line for: Air Conditioner _____ Furnace _____ to code.
8. _____ Install drip leg on _____
9. _____ Furnace _____ Hot Water Heater _____ must be readily accessible.
10. _____ Install condensate pump and pipe to trapped fixtures.
11. _____ Mortar around - Furnace _____ Hot Water Heater _____ Vent to chimney _____.
12. _____ Install back flow preventor on water supply to boiler (WATTS 9-D).
13. _____ Introduce fresh air to Furnace Room.
14. _____ Install pressure relief valve on Hot Water Heater with pipe to be four (4) inches off the floor.

**PERMIT REQUIRED: YES_____ NO_____ DATE** 7-25-16 **INSPECTOR** *BW* **FINAL DATE_____ INSPECTOR_____**

ADDITIONAL COMMENTS: _____

_____

---

**REFERENCE: 2012 International Property Maintenance Code (Plumbing)**

1. _____ Install outside cleanout (or expose same) on sanitary sewer line in all basementless homes.
2. _____ Repair or replace: Sinks _____ Toilet _____ Tub _____ Faucets _____ Other _____.
3. _____ Install vacuum breakers on: laundry tub faucet _____ outside faucets _____ spray hoses on toilet supply _____.
4. _____ Replace: Floor Drain _____ Shower Drain _____ missing or broken cleanout plugs ( inside / outside).
5. _____ Replace leaking _____ or missing _____ water heater _____ fixtures.
6. _____ Install temperature pressure relief valve on water heater. Pipe for same to within (4) inches of floor.
7. _____ Install gate valve on cold water supply to water heater or ball valve _____ remove nonconforming valve.
8. _____ Garbage disposal: install _____ repair _____ replace _____.
9. _____ Install code material on hot water tank water supply _____ install dielectric union, flex line must be full size.
10. _____ Install back flow preventer, boiler water supply _____ lawn sprinkler _____.
11. _____ Water on to all fixtures. Replace all missing _____ or rusted water lines.

**PERMIT REQUIRED: YES_____ NO_____ DATE** 7-25-16 **INSPECTOR** *BW* **FINAL DATE_____ INSPECTOR_____**

ADDITIONAL COMMENTS: *CORRECT KITCHEN SINK DRAIN ( REMOVE S-TRAP)*

_____

---

These inspection reports for Building, Electrical, Mechanical, and Plumbing are valid for 6 months. If any conditions change on the property, these inspection reports are considered null and void. A re-inspection fee will be required if inspector is not able to enter the premises at time of appointment.

**COMPLIANCE REQUIRED BY CITY OF DEARBORN HEIGHTS BUILDING CODES**

When all corrections have been made, notify this Department to arrange for a final inspection before new occupancy. This inspection of the land use, plot use, exterior posture, and interior accessories of the structure is limited to the visual inspection only. A certificate of approval is not a warranty or guarantee that there are not defects in the structure nor shall the City be held responsible for defects not noted in the inspection report. This inspection does not certify that the structure in question is not in violation of other code requirements not presently brought to the attention of the Building Department, warranties if desired are a private matter between the seller(s) and the buyer(s).

**ANY QUESTIONS ON THIS REPORT?   PHONE 313-791-3470 BETWEEN 8:30 - 9:00a.m.  OR  4:00 - 5:00p.m.**

STATE OF MICHIGAN
IN THE 20TH JUDICIAL DISTRICT COURT

The PEOPLE of the STATE OF MICHIGAN  Case No. ___X 0 2 1 9 6 5 A___

(v)
DEFENDANT _Bunting Properties_

## STIPULATED PLEA AGREEMENT

The People add Count II, to wit: _____
a. Defendant waives a formal reading and any defect in the amended complaint, and submits a signed Advice of Rights as proof of understanding those rights.
b. Following the acceptance of a proper plea to the added Count, the People move to dismiss the original charge of _____
c. Additional terms _____

Defendant pleads _____ to _____
a. The People recommend sentence to be deferred for a period of _____
b. During this period, Defendant must commit no violations of law.
c. Following a successful completion of the above specified period, the People recommend dismissal, upon payment of any costs the Court might assess.
d. Additional terms _____

Defendant pleads _____GUILTY _____NO CONTEST _____RESPONSIBLE to the charge (s) of
a. Additional recommendations _____
b. Justification for no contest plea: _____possible civil liability _____lack of recall _____other.
The parties stipulate to _____ to establish factual basis.

The People move for _____DISMISSAL _____NOLLE PROSEQUI as to the charge(s) now pending, to wit:

_____ WITH PREJUDICE _____ WITHOUT PREJUDICE
_____ WITH COSTS _____
_____ WITHOUT COSTS _____

The above cause shall be brought on for a trial to _____the Bench _____Jury.
a. Jury was waived on (date) _____before Judge _____
b. Witness for the People _____Defense _____Trial duration _____

**A TRUE COPY**
~Xusher~
Court Clerk
Date _2-8-18_

Defendant has failed to appear this date. The People request the Court to:
_____ ISSUE A BENCH WARRANT _____FORFEIT ANY BOND CURRENTLY IN EFFECT
_____ ENTER DEFAULT JUDGEMENT ON CASE NO _____
_____ ASSESS ADDITIONAL COSTS OF _____TO COVER WITNESS FEES.

Occupants agree to Vacate Premises by 2/27/18 If premises are not Vacated, P may complete eviction.

_2-08-18_
DATE

DEFENDANT OR ATTORNEY

PROSECUTING ATTORNEY

**RESIDENTIAL BUILDING &**
**ELECTRICAL**

**CITY OF DEARBORN HEIGHTS**
Department of Building and Engineering
6045 Fenton, Dearborn Heights, MI 48127
**313-791-3470**

RECEIPT# _____

APPL. DATE 11/14/17

INSP. DATE 11/21/17  12-4pm

REFERENCE: 2012 International Property Maintenance Code (Building)

| # | Category | Install | Remove | Replace | Repair | Paint | Clean | Additional Comments |
|---|----------|---------|--------|---------|--------|-------|-------|---------------------|
| 1 | Concrete: City Sidewalk - Approach | | | | | | | |
| 2 | Service Walk - Driveway | | | X | | | | |
| 3 | Roof | | | | | | | |
| 4 | Gutters - Downspouts - Trim - Siding | | | | | | | |
| 5 | Doors: Prime - Storm | | | | | | | |
| 6 | Step: Front, Rear, Side | | | | | | | |
| 7 | Windows: Prime - Screen | | | X | | | | |
| 8 | Storm Doors: Front - Rear - Side | | | | | | | |
| 9 | Change Dbl Key Cylinder: F - R -S | | | | | | | |
| 10 | Garage: Walls/ Trim/ Doors/ Floor | | | | | | | |
| 11 | Roof / Windows | | | | | | | |

NO (next to rows 1-2)
OK (next to row 12)
Batteries (handwritten)

12 Install Carbon Monoxide & Smoke Detectors: All Bedrooms  Hall Outside Bedrooms  All Levels
13 Will accept **NOTARIZED** statement from Purchaser(s) accepting the following item #'(s) "as is" _____

| FRONT ROOM / BEDROOM | KITCHEN | BATHROOM | BASEMENT | UPSTAIRS |

REPAIR: _____

ADDITIONAL COMMENTS: _____
_____
_____

PERMIT REQUIRED: YES_____ NO_____ DATE 3-5-18 INSPECTOR _____ FINAL DATE_____ INSPECTOR BW _____

REFERENCE: 2011 National Electrical Code (Electrical)

1. _____ Increase electrical service to minimum of three (3) wire 100 amperes.
2. _____ Provide additional duplex electrical receptacle(s) conveniently located: _____
3. _____ Install multiple switch control at head and foot of stair to:   Second Floor  /  Basement.
4. _____ Provide a separate wall mounted 20 ampere laundry circuit.
5. _____ Repair receptacle(s), wall switch(es), wall fixture(s), ceiling fixture(s) in _____
6. X  Discontinue use of extension cords in lieu of permanent wiring in  no laundry room
7. _____ Install separate 20 ampere circuit for kitchen, supplying three (3) duplex outlets.
8. _____ Replace worn service entrance cable ___ Top _X_ Bottom _X_ Riser ___ Meter Can ___ Ground Rod ___ Waterground.
9. X  Ground kitchen and laundry outlets: _X_ G.F.I. ___ Kitchen ___ Bathroom.
10. _____ Install garbage disposal.   10a. Wire garbage disposal to code _____.

PERMIT REQUIRED: YES_____ NO_____ DATE _____ INSPECTOR _____ FINAL DATE 3-5-18 INSPECTOR BW

ADDITIONAL COMMENTS: _____

*These inspection reports for Building, Electrical, Mechanical, and Plumbing are valid for 6 months. If any conditions change on the property, these inspection reports are considered null and void. A re-inspection fee will be required if inspector is not able to enter the premises at time of appointment.*

**COMPLIANCE REQUIRED BY CITY OF DEARBORN HEIGHTS BUILDING CODES**

When all corrections have been made, notify this Department to arrange for a final inspection before new occupancy. This inspection of the land use, plot use, exterior posture, and interior accessories of the structure is limited to the visual inspection only.  A certificate of approval is not a warranty or guarantee that there are not defects in the structure nor shall the City be held responsible for defects not noted in the inspection report. This inspection does not certify that the structure in question is not in violation of other code requirements not presently brought to the attention of the Building Department. warranties if desired are a private matter between the seller(s) and the buyer(s).

**ANY QUESTIONS ON THIS REPORT?   PHONE 313-791-3470 BETWEEN 8:30 - 9:00a.m.  OR 4:00 - 5:00p.m.**

8639 Columbia/Bunting Prop/Rental/Occupied/Will Meet

**MECHANICAL &**
**PLUMBING**

**CITY OF DEARBORN HEIGHTS**
Department of Building and Engineering
6045 Fenton, Dearborn Heights, MI 48127
**313-791-3470**

RECEIPT# _____

APPL. DATE 1/14/17

INSP. DATE 1/21/17 12-4pm

REFERENCE: 2012 International Property Maintenance Code (Mechanical)

1. _____ Thermostat / Registers - Secure _____ Replace _____
2. _____ Install AGA type gas valve on: Furnace ~~X~~ Stove _____ Other _ Hot Water Tank
3. X Run vent on: Furnace _____ Hot Water Heater _____ Dryer ~~X~~ to code.
4. X Have furnace heat exchanger tested by licensed contractor. Copy of report to inspector.
5. X Install chimney liner for: Furnace _____ Hot Water Heater _____.
6. _____ Make humidifier operable or remove.
7. _____ Condensate line for: Air Conditioner _____ Furnace _____ to code.
8. _____ Install drip leg on _____.
9. _____ Furnace _____ Hot Water Heater _____ must be readily accessible.
10. _____ Install condensate pump and pipe to trapped fixtures.
11. _____ Mortar around - Furnace _____ Hot Water Heater _____ Vent to chimney _____.
12. _____ Install back flow preventor on water supply to boiler (WATTS 9-D).
13. _____ Introduce fresh air to Furnace Room.
14. _____ Install pressure relief valve on Hot Water Heater with pipe to be four (4) inches off the floor.

PERMIT REQUIRED: YES_____ NO_____ DATE_____ INSPECTOR_____ FINAL DATE_____ INSPECTOR_____
ADDITIONAL COMMENTS:_____ 3-5-18 _____ BW _____
_____

REFERENCE: 2012 International Property Maintenance Code (Plumbing)

1. _____ Install outside cleanout (or expose same) on sanitary sewer line in all basementless homes.
2. _____ Repair or replace: Sinks _____ Toilet _____ Tub _____ Faucets _____ Other _____
3. NO Install vacuum breakers on: laundry tub faucet ~~X~~ outside faucets _____ spray hoses on toilet supply _____.
4. _____ Replace: Floor Drain _____ Shower Drain _____ missing or broken cleanout plugs ( inside / outside).
5. _____ Replace leaking _____ or missing _____ water heater _____ fixtures.
6. _____ Install temperature pressure relief valve on water heater. Pipe for same to within (4) inches of floor.
7. _____ Install gate valve on cold water supply to water heater or ball valve _____ remove nonconforming valve.
8. _____ Garbage disposal: install _____ repair _____ replace _____.
9. _____ Install code material on hot water tank water supply _____ install dielectric union, flex line must be full size.
10. _____ Install back flow preventer, boiler water supply _____ lawn sprinkler _____.
11. _____ Water on to all fixtures. Replace all missing _____ or rusted water lines.

PERMIT REQUIRED: YES_____ NO_____ DATE_____ INSPECTOR_____ FINAL DATE_____ INSPECTOR_____
ADDITIONAL COMMENTS:_____ 3-5-18 _____
Ground Water Meters OK _____

These inspection reports for Building, Electrical, Mechanical, and Plumbing are valid for 6 months. If any conditions change on the property, these inspection reports are considered null and void. A re-inspection fee will be required if inspector is not able to enter the premises at time of appointment.

**COMPLIANCE REQUIRED BY CITY OF DEARBORN HEIGHTS BUILDING CODES**

When all corrections have been made, notify this Department to arrange for a final inspection before new occupancy. This inspection of the land use, plot use, exterior posture, and interior accessories of the structure is limited to the visual inspection only. A certificate of approval is not a warranty or guarantee that there are not defects in the structure nor shall the City be held responsible for defects not noted in the inspection report. This inspection does not certify that the structure in question is not in violation of other code requirements not presently brought to the attention of the Building Department, warranties if desired are a private matter between the seller(s) and the buyer(s).
ANY QUESTIONS ON THIS REPORT?  PHONE 313-791-3470 BETWEEN 8:30 - 9:00a.m.  OR  4:00 - 5:00p.m.

## CITY OF DEARBORN HEIGHTS

**IN RE:  BUNTING PROPERTIES I, INC.**
**8639 Columbia**
**Dearborn Heights, Michigan  48127**

_____/

**METRO DETROIT LITIGATION GROUP**
**BY: STUART SANDWEISS (P60921)**
ATTORNEYS FOR BUNTING PROPERTIES I, INC.
18481 West Ten Mile Rd., Suite 100
Southfield, MI 48075-2621
(248) 559-2400  Fax (800) 577-1716
e-mail: stuart@sandweisslaw.com

_____/

TO:   Mohamed Sobh, Director
Building & Engineering Department
City of Dearborn Heights
6045 Fenton Street
Dearborn Heights, Michigan  48127

RE: 8639 Columbia, Dearborn Heights

Dear Mr. Sobh,

On March 5, 2018 your department performed an inspection of the above captioned property and issued a Property Inspection Report.  Pursuant to Section 111 of the International Property Maintenance Code ("IPMC"), which was adopted by the City of Dearborn Heights, Bunting Properties I, Inc. is notifying you that it seeks to appeal the decision of the code official who issued the report.

To wit:

- The alleged violations  regarding the furnace and/or water tank were found to be in compliance by Parsons - see attached.  (This documentation was previously presented to the City on February 8, 2018).

- The alleged plumbing violation (missing vacuum breaker on the laundry tub faucet) was already remedied;

- There is no evidence of a screen repair needed;

- The alleged concrete repair is a) not necessary; and b) cannot be completed during the winter months.

- There is no working dryer in the house and thus there is no need to vent the dryer.



METRO DETROIT
LITIGATION GROUP

Accordingly, pursuant to Section 111.8 of the IPMC, all enforcement of the notice and/or order issued by the city must STOP until the appeal is heard by the appeals board.

Please contact me at your earliest convenience to discuss resolution.

METRO DETROIT LITIGATION GROUP

By: STUART SANDWEISS (P60921)
Attorneys for Bunting Properties I, Inc.
18481 West Ten Mile Road, Suite 100
Southfield, Michigan 48075
(248) 559-2400  Fax (800) 577-1716

Dated: March 6, 2018



METRO DETROIT
LITIGATION GROUP

# PARSONS HTG. CLG. & ELEC.

"SINCE 1926"
25431 W. WARREN
DEARBORN HEIGHTS, MI 48127
(313) 581-4900 • (313) 561-8751

Carrier

Nº 37376

NAME: Stuart Sandweiss
STREET: 8639 Columbia
CITY: D.H.

MAKE: Comfortmaker GN3J JBSN2201
SERIAL NUMBER: #2973000

City Cert. Checked all
Controls & High Limit - Good
Performed Co Test by way
of electronic Analyzer Found
of 0 ppm's entering home @ this
time - Changed filter -
System operating good
@ this time

LICENSE #7150005

CHECK LIST

COMPRESSOR
CONDENSER COIL
REFRIGERANT
FAN AND MOTOR
EVAPORATOR COIL
CONDENSATE AREAS
AIR FILTERS
HEATING ASSY.
ELECTRICAL COMPTS.
THERMOSTAT

| QUANTITY | ITEM OR PART DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | 16x25x1 Filter | | 9.50 |

SERVICE: 109.95

TOTAL AMOUNT DUE: 119.45